IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

WALTRAUD KATHARINA M. THOMAS, }
                               }
        Appellant,             }
                               }        CIVIL ACTION NO.
v.                             }        07-AR-1264-E
                               }
TRANZIE  LOVELESS  and  LAURA  }
LOVELESS                       }
                               }
        Appellees.            }

**MEMORANDUM OPINION**

On May 21, 2007, the Bankruptcy Court of the Northern District of Alabama (the "bankruptcy court"), Hon. James J. Robinson, entered a final judgment in this adversary proceeding brought by appellees, Tranzie Loveless ("Tranzie") and Laura Loveless ("Laura") (together, "plaintiffs"), against appellant, Waltraud Katharina M. Thomas ("Ms. Thomas"). Ms. Thomas, who is *pro se*, now brings a timely appeal from that order.

The court has jurisdiction over this appeal under 28 U.S.C. §158(a)(1).

### I. Standard of Review

The bankruptcy court's findings of fact are subject to a clearly erroneous standard of review, while its conclusions of law are subject to *de novo* review.  *In re Richard W. Paschen*, 296 F.3d 1203, 1205 (11th Cir. 2002).

### II. Procedural History

On July 16, 2006, plaintiffs filed an adversary proceeding

against Ms. Thomas in the bankruptcy court in Ms. Thomas's pending Chapter 7 bankruptcy.  In Count I of their complaint, plaintiffs sought a declaration that a debt owed to them by Ms. Thomas is nondischargeable under 11 U.S.C. § 523(a)(6).  The debt originated from a civil judgment plaintiffs received in the Circuit Court of Cleburne County, Alabama (the "state court") after a jury found Ms. Thomas liable for conspiracy to commit the act of shooting a firearm into plaintiffs' dwelling and of shooting Tranzie Loveless, and for malicious prosecution of Tranzie Loveless.  On April 10, 2007, the bankruptcy court granted plaintiffs' motion for summary judgment, finding the judgment debt nondischargeable.

On May 21, 2007, the bankruptcy court entered a final judgment with respect to all of plaintiffs' remaining claims.  It reiterated its summary-judgment ruling as to plaintiffs' Count I, and it further found that counts II, III, and IV were moot or withdrawn.  As to plaintiffs' last remaining claim, Count V, titled "Complaint to Determine the Extent and Validity of a Lien," the bankruptcy court ruled that plaintiffs could proceed with levy and sale against any property belonging Ms. Thomas, subject to Ms. Thomas's homestead exemption of $5,000.

On July 17, 2007, after giving a timely notice of appeal, Ms. Thomas filed her brief with this court pursuant to Bankruptcy Rule 8009.  She appeals only the bankruptcy court's ruling as to Count I of plaintiffs' complaint — she does not take direct issue with

the bankruptcy court's ruling as to Count V, although the viability of the bankruptcy court's ruling on Count V is dependent on that of Count I.  Plaintiffs filed a timely response brief on July 30, 2007, and certified that a copy of their brief was served on Ms. Thomas by placing it in the United States Mail, postage prepaid, to Ms. Thomas's last-known address, on July 31, 2007.  If Ms. Thomas wished to file a reply to plaintiffs' brief, she was required to do so no later than August 14, 2007, ten business days after plaintiffs effected service.  *See* Bankruptcy Rule 8009(a)(3) ("The appellant may serve and file a reply brief within 10 days after service of the brief of the appellee . . . ."); Fed. R. Civ. P. 5(b)(2)(B) ("Service . . . is made by [] [m]ailing a copy to the last known address of the person served. Service by mail is complete on mailing.")  Ms. Thomas has not filed (and was not required to file) a reply.  Her appeal is now under submission.

### III. The State-Court Action

On January 21, 1996, Mr. Thomas (Ms. Thomas's husband) fired gun shots into plaintiffs' home, causing damage to plaintiffs' property.  On April 12, 1996, Mr. Thomas again fired shots into plaintiffs' home, this time striking and injuring Tranzie Loveless, and further damaging plaintiffs' property.  Plaintiffs thereafter filed a civil action against Mr. and Ms. Thomas in state court, CV-1998-05, alleging, *inter alia*, that

> defendant Melvin Thomas and defendant Katharina Thomas
> did scheme, plan, design and conspire together to

3

> unlawfully, and with malice aforethought, kill the plaintiff Tranzie Loveless, attempt to kill the plaintiff Tranzie Loveless, assault the plaintiff Tranzie Loveless and cause serious bodily injury, attempt to assault the plaintiff Tranzie Loveless and cause serious bodily injury, discharge a firearm into a dwelling occupied by Tranzie Loveless, Laura Loveless and their minor child, Justin Loveless, maliciously prosecute the plaintiff Tranzie Loveless for alleged criminal acts that the defendants knew that Tranzie Loveless had not committed.

On March 20, 2001, a jury in the state-court action returned a verdict against Ms. Thomas. It awarded $44,012.00 in compensatory damages and $200,000.00 in punitive damages for plaintiffs' conspiracy claim against Ms. Thomas, and $1,000.00 in compensatory damages for Tranzie Loveless's malicious-prosecution claim against Ms. Thomas.

Although both Mr. Thomas and Ms. Thomas were named as defendants in plaintiffs' state-court complaint, plaintiffs were proceeding only against Ms. Thomas when the case went to trial. According to Ms. Thomas, Mr. Thomas was incarcerated at the time plaintiffs won their verdict against her on March 20, 2001, and "the only judgment entered against Melvin Thomas in the state court case CV-1998-05, was entered on January 19th 2000, by Judge Monk, for $44,797.36 which Monk says is based on the restitution imposed against Melvin in his criminal case." According to the transcript from the state-court proceeding against Ms. Thomas, the judgement against Mr. Thomas likely was entered after Mr. Thomas defaulted. Mr. Thomas was never found liable for civil conspiracy or found guilty of criminal conspiracy.

## IV. Discussion

Chapter 7 of the Bankruptcy Code is designed for debtors who are in financial difficulty.  11 U.S.C. § 727 creates a mechanism by which a qualifying person can obtain a discharge of his or her existing debts.  § 523(a)(6) carves out one exception to the dischargeability of debts under Chapter 7, providing that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  The bankruptcy court ruled in its April 10 and May 21, 2007 orders that plaintiffs were entitled to summary judgment as to the dischargeability of Ms. Thomas's debt.  First, in light of the state-court jury verdict against Ms. Thomas, the bankruptcy court held that there was no dispute of material fact that Ms. Thomas had participated in a conspiracy and committed the act of malicious prosecution.  Second, the bankruptcy court held that injuries resulting from conspiracy and malicious prosecution qualify as being "willful and malicious," and that the judgment against Ms. Thomas therefore is nondischargeable under Section 523(a)(6).

### A. Collateral Estoppel

Ms. Thomas argues that the bankruptcy court erred when it applied the doctrine of collateral estoppel to the state court's determination that she participated in a conspiracy.  Collateral

estoppel is implicated when the same parties who were involved in a prior lawsuit are litigants in a different cause of action in a subsequent suit.  *Webb v. State of Ala., Dept. of Pensions and Sec.*, 850 F.2d 1518, 1520 (11th Cir. 1988).  Requirements for collateral estoppel to operate are (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the final judgment.  *In re Jenkins*, 258 B.R. 251, 264 (Bkrtcy. N.D. Ala. 2001) (citing *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998); *HSSM # 7 Limited Partnership v. Bilzerian* (*In re Bilzerian*), 100 F.3d 886 (11th Cir. 1996); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990)); *Webb*, 850 F.2d at 1520.

The bankruptcy court correctly determined that collateral estoppel applied in plaintiffs' adversary proceeding against Ms. Thomas.  The United States Supreme Court has recognized the applicability of collateral estoppel in dischargeability litigation.  *See generally Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991).  All of the elements of collateral estoppel are present in this case: in both the state-court and bankruptcy-court causes of action, the parties are the same, the issues of malicious prosecution and conspiracy are identical, those issues were actually litigated to final judgment in the prior state-court

action, and resolution of the issues was necessary to the judgment against Ms. Thomas in state court. Ms. Thomas strenuously objects to the bankruptcy court's reliance on the unpublished opinion *In re Dramian* from the United States Bankruptcy Court for the Northern District of Illinois, a case with some similarities to this case, where that court determined that collateral estoppel applies to a prior judgment for conspiracy. AP No. 05-01783 (Bankr. N.D. Ill. June 22, 2006). Although *Dramian* is not binding precedent, and although it is distinguishable from this case in several respects, the bankruptcy court did not err in citing it as persuasive authority.

Ms. Thomas also argues that collateral estoppel does not apply in this case because the state court's judgment against her is "contrary to law" and therefore is not valid. Ms. Thomas contends that a conspiracy necessarily involves two or more perpetrators, and since Mr. Thomas was neither tried nor found liable for participating in a conspiracy in the civil case, and since Mr. Thomas was not charged for conspiracy by the district attorney in Cleburne County, the state-court judgment against her is void. She argues that the judgment against her for malicious prosecution is void because "Tranzie admitted that he tore down the gate, the one Katharina got a warrant against him for, which Tranzie now say Katharina prosecuted him," and that "confession of guilt is suffice for a person to be prosecuted on." The major problem with Ms.

Thomas's argument is that the bankruptcy court was not authorized to reverse the state court's judgment, even if it had the inclination to do so.  The United States Bankruptcy Court for the Northern District of Alabama does not have appellate jurisdiction over the state courts of Alabama.  Ms. Thomas had every opportunity to defend herself against plaintiffs' civil action in the state-court system, including the right to appeal.  The bankruptcy court was correct in refraining from doing any second-guessing. Bankruptcy courts are required to give full faith and credit to lawfully obtained state-court judgments.  *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d. Cir. 1987) (citing 28 U.S.C. § 1738[1]). There is no reason to believe that the state-court judgment against Ms. Thomas was unlawfully procured.  Ms. Thomas argues that the state-court judgment was spawned from an "extortion plot" and "a fraud on the Cleburne County Circuit Court," but there simply is no

---

[1] 28 U.S.C. § 1738 provides in full:

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

evidence to prove her assertion.

Even if the bankruptcy court or this court was equipped and authorized to sit as an appellate body over the state court, the conspiracy judgment against Ms. Thomas would not be reversed. It is true that a conspiracy, by definition, requires the collaboration of two or more people. However, although a conspiracy must involve more than one individual, there is no requirement that two or more conspirators be tried, found liable, or convicted. *See* 16 Am. Jur. 2d Conspiracy § 66 ("Under the principle of joint and several liability, all conspirators may be joined as parties defendant in the action, but it is not necessary, in order for one member of civil conspiracy to be liable, that all members of conspiracy be named defendants or be joined as defendants; the plaintiff, at his or her option, may maintain suit against any one or more of them.") (citations omitted). This is a well-established concept and is not radical or controversial. Ms. Thomas's statement, which she does not support with a citation to any legal authority, that the law on conspiracy "does require that two or more be tried and proved to have reached an agreement," is not a correct statement of law. For example, under Alabama criminal law, a defendant can be convicted of conspiracy though charges against his or her co-defendant are dropped or the co-defendant is acquitted. *Bright v. State*, 485 So.2d 398, 399 (Ala. Cr. App. 1986). Although this court is not aware of an expression

from an Alabama appellate court that a judgment of civil conspiracy against only one defendant is permissible, it has absolutely no doubt that such an expression is perfectly consistent with Alabama law.

Plaintiffs, apparently after learning that the dwelling of Mr. and Ms. Thomas was owned by Ms. Thomas, decided to pursue their civil case against Ms. Thomas on a conspiracy theory.  Although this likely was a strategic decision that plaintiffs made in order to obtain a lien on Ms. Thomas's property, nothing about it is legally unacceptable.  Plaintiffs still needed to prove by a preponderance of the evidence that Ms. Thomas participated in a conspiracy in order for the jury to return the verdict that it returned.  Neither the bankruptcy court nor this court has any reason or authority to question the jury's decision, unreviewed by an Alabama appellate court.

There was nothing improper, fraudulent, or otherwise "contrary to law" about the state court's finding Ms. Thomas liable for conspiracy to commit an underlying act that actually was committed by Mr. Thomas, when Mr. Thomas was neither tried nor found liable for conspiracy.  Ms. Thomas is correct that a void judgment "is and forever continues to be absolutely null, without legal efficacy." *Loyd v. Director, Dept. of Public Safety*, 480 So.2d 577, 579 (Ala. Civ. App. 1985).  A judgment is not void, however, simply because the individual against whom it is entered disagrees with it.

The court is unable to offer even a brief discussion of the wisdom, or the alleged lack thereof, of the state court in entering the judgment for malicious prosecution against Ms. Thomas, even if such a discussion would be appropriate considering the roles of the bankruptcy court and of this court in this matter.  Ms. Thomas has not furnished the court with anything except for a one-sided and incomplete rendition of the facts that the jury had for consideration when it found her liable under the malicious-prosecution count.

## B. Dischargeability

Ms. Thomas argues that even if the bankruptcy court correctly applied the doctrine of collateral estoppel, it erred when it concluded that the debt is one "for willful and malicious injury" by her to plaintiffs and/or plaintiffs' property as to render them nondischargeable under Section 523(a)(6).

### 1. Conspiracy

Under Alabama law, "[c]onspiracy has been defined as the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means."  *Snyder v. Faget*, 295 Ala. 197, 326 So.2d 113, 116 (Ala. 1976) (citation omitted).  "It is also established that the gist of the action in

civil conspiracy is the wrong committed rather than the conspiracy itself." *Id.* In other words, "each conspirator is answerable for the acts of each and all of his coconspirators if the acts be in furtherance of the conspiracy or the matter direct and proximate result of such conspiracy." *De Bardeleben v. Sellers*, 84 So. 403, 405 (Ala. App. 1919).

The bankruptcy court concluded that there was no dispute of material fact that Ms. Thomas's injury against plaintiffs was "willful and malicious." It based this conclusion on the jury's having awarded plaintiffs $200,000 in punitive damages on their conspiracy claim against Ms. Thomas. In *Gulf Oil Corp. v. Spriggs Enterprises, Inc.*, the Alabama Supreme Court explained that "exemplary or punitive damages (under a conspiracy count) . . . may be awarded, if the wrong done is aggravated by evil motive, actual malice, deliberate violence, or oppression, or otherwise essentially sounds in tort. However, exemplary damages are never recoverable . . . if there is no evidence of wantonness or malice." 388 So.2d 518, 525 (Ala. 1980). The bankruptcy court reasoned that, since Mr. Thompson's act of shooting into the dwelling of plaintiffs is attributable to Ms. Thompson under the law of conspiracy, and since punitive damages can only be assessed when aggravating factors are present, there is no dispute of material fact that Ms. Thompson willfully and maliciously injured Tranzie and plaintiffs' property.

12

The bankruptcy court only logically inferred from the assessment of punitive damages that Ms. Thomas's debt is nondischargeable under Section 523(a)(6). First, the state-court jury was required to find that Ms. Thomas's participation in the conspiracy was aggravated by evil motive, actual malice, deliberate violence, or oppression in order to assess punitive damages. *See id.* For purposes of Section 523(a)(6), "malice" connotes malevolent purpose for action. *In re Howard*, 261 B.R. 513, 520 (Bkrtcy. M.D. Fla. 2001). Since the jury did, in fact, punish Ms. Thomas for her role in the conspiracy by awarding punitive damages to plaintiffs, there can be no doubt that it found that Ms. Thomas participated in the conspiracy with a malevolent purpose.

Second, there is no dispute of material fact that Ms. Thomas's injury against Tranzie Loveless and plaintiffs' property was willful. The United States Supreme Court has given the following definition of the term "willful" contained in Section 523(a)(6):

> The . . . word "willful" modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely . . . a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury" or selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, § 523(a)(6)'s formulation triggers in the lawyer's mind the category "intentional torts," which generally require that the actor intend the consequences of an act, not simply the act itself.

*Kawaauhau v. Geiger*, 523 U.S. 57, 57-58, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In order to find that Ms. Thomas participated in a

13

conspiracy with Mr. Thomas, the jury did not necessarily need to find that Ms. Thomas intended the exact consequences that resulted from Mr. Thomas's act of discharging a firearm into plaintiffs' home. *See Nat'l Park Bank of New York v. Louisville & N.R. Co.*, 74 So. 69, 72 (Ala. 1917) ("[E]ach conspirator is responsible for everything done by his confederates which the execution of the common design makes probable in the nature of things as a consequence, even though such a consequence was not intended as a part of the original design or common plan"). However, for purposes of Section 523(a)(6), "a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury **or which is substantially certain to cause injury**." *Hope v. Walker* (*In re Walker*), 48 F.3d 1161, 1165 (11th Cir. 1995) (emphasis added). There can be no genuine dispute that Ms. Thomas's conspiring to discharge a firearm into the home of plaintiffs would, with substantial certainty, result in injury to Tranzie Loveless and to plaintiffs' property.

In making this ruling, the court does not issue a broad holding that any debt arising from an act taken pursuant to a conspiracy necessarily renders the debt nondischargeable under Section 523(a)(6). It holds only that in this case, where a jury previously found that Ms. Thomas's participation in the conspiracy was necessarily malicious, and where the underlying act was substantially certain to cause injury of the very type that

14

actually was sustained by plaintiffs, there is no dispute of material fact that the injury caused by Ms. Thomas was both willful and malicious.

*2. Malicious Prosecution*

Although Ms. Thomas unpersuasively argues that the judgment against her for malicious prosecution is void, she does not contend that the judgment, if not void, does not conclusively establish that the resulting injury to Tranzie Loveless was willful and malicious.  The court therefore adopts the sound reasoning of the bankruptcy court with respect to the effect of Section 523(a)(6) on the judgment against Ms. Thomas for malicious prosecution.

### V. Conclusion

The bankruptcy court correctly applied the doctrine of collateral estoppel to the state-court's judgments against Ms. Thomas for conspiracy and for malicious prosecution.  The bankruptcy court was also correct in finding that there is no genuine dispute of material fact that Ms. Thomas's debt is one for willful and malicious injury to Tranzie Loveless and to plaintiffs' property.  Accordingly, the bankruptcy court's final order of May 21, 2007 is AFFIRMED.

DONE this 16th day of August, 2007.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE